STATE of Wisconsin, Plaintiff-Appellant,

v.

Jennifer K. MATEJKA, Defendant-Respondent-
Petitioner.

Supreme Court

*No. 99–0070–CR. Oral argument September 6,
2000.—Decided February 6, 2001.*

2001 WI 5

(Also reported in 621 N.W.2d 891.)

For the defendant-respondent-petitioner there were briefs by *James B. Connell* and *Crooks, Low, Connell & Rottier, S.C.*, Wausau, and oral argument by *James B. Connell*.

For the plaintiff-appellant the cause was argued by *Jennifer E. Nashold*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

¶ 1. DIANE S. SYKES, J. The issue in this case is whether, under the consent exception to the Fourth Amendment's warrant requirement, a driver's consent to a police officer's search of a vehicle extends to a passenger's jacket left in the vehicle at the time of the search. Defendant Jennifer Matejka was one of several passengers in a van that was stopped by a state trooper for a traffic violation. The trooper obtained the driver's

consent to search the van and ordered everyone out while he conducted the search. Matejka left her jacket behind, and the trooper eventually searched it, finding drug paraphernalia and marijuana. Additional drug paraphernalia, marijuana, and LSD were discovered during a custodial search of Matejka and her belongings after her arrest.

¶ 2. The circuit court suppressed the drug evidence, finding a Fourth Amendment violation because Matejka had not personally consented to the search of her individual property within the van. The court of appeals reversed, concluding that the driver's consent to the search of the van encompassed the jacket Matejka had left in it. We agree, and therefore affirm the decision of the court of appeals which reversed the circuit court's suppression of the drug evidence in this case.

## FACTS

¶ 3. On March 16, 1997, Wisconsin State Trooper David Forsythe observed a van traveling on a Portage County highway. The van had no front license plate, so he pulled it over.[1]

¶ 4. The van had windows all the way around the exterior. From his squad car, Forsythe could see the driver and a passenger in the front seat. As he pulled the van over, Forsythe noticed the driver "leaning over to his right and going down lower as if he was either trying to hide something or retrieving something." Forsythe said he thought the driver might have been "going for a weapon or hiding a weapon or a multitude

---

[1] Wisconsin Stat. § 341.15(1) (1995–96) directs that "[w]henever 2 registration plates are issued for a vehicle, one plate shall be attached to the front and one to the rear of the vehicle."

of other possible options." As a result, Forsythe approached the van with "heightened awareness."

¶ 5. As he walked along the driver's side of the van, Forsythe looked through a side vent window and observed several other passengers covered with blankets and pillows on the back floor of the van. Forsythe told the passengers to put their hands where he could see them and asked the driver to step out of the van. The driver, Anthony Miller, did so, and handed Forsythe his driver's license. Forsythe told Miller he was concerned about his movements in the front seat of the van and asked him if "there was anything he should be aware of." Miller said no, but consented to a frisk for weapons, which produced nothing.

¶ 6. Forsythe then checked the area around the driver's seat for weapons and noticed a backpack. Inside the backpack Forsythe discovered a toy handgun and a postal scale. Forsythe testified that he first thought the gun was an actual firearm, but on closer inspection realized it was not. Miller told Forsythe he used the scale to weigh mail. Forsythe suspected the scale was used to weigh illegal drugs.

¶ 7. Forsythe told Miller he was going to give him a warning for the license plate violation. He then asked Miller to open the back hatch of the van so he could watch everyone inside while he wrote the warning in his squad car. After the hatch was opened, Forsythe asked the passengers for identification. Forsythe then returned to his squad car, where he called for back-up and ran criminal history checks on the van's occupants. Forsythe learned that several of the passengers, including Matejka, were on probation and that Matejka had a drug-related criminal history.

¶ 8. While Forsythe prepared the warning and ran the checks, Trooper Parrott arrived as back-up.

Forsythe returned to the van, gave Miller the warning, and told him he was free to go. Forsythe then asked Miller if there was anything he should "be aware of in the van as far as any other guns, drugs, anything illegal at all." Miller said no. Forsythe then asked for permission to search the van. Miller consented.

¶ 9. Forsythe told the passengers he was concerned about contraband in the van and explained that the driver had consented to a search of the vehicle. Forsythe asked the passengers to get out of the van while he conducted the search. As they did so, Forsythe asked about "any weapons, knives, guns, razor blades," or anything else he should be aware of, and asked for consent to frisk for weapons. Each consented, including Matejka, and no weapons were discovered.

¶ 10. Forsythe searched the van while Trooper Parrott waited outside with the driver and passengers. It was a cold March day, and some asked for their jackets. Parrott asked Forsythe to bring the jackets out of the van.

¶ 11. Forsythe got the jackets out of the van, checking each one for weapons. Forsythe said he did not know which jacket belonged to whom, although Matejka testified that each passenger was asked to describe his or her jacket. In any event, Forsythe found a "wooden dugout type container" containing marijuana in the pocket of the jacket Matejka identified as hers.

¶ 12. Forsythe took Matejka aside, told her what he had discovered, and arrested her. Forsythe put Matejka in the back of the squad car and returned to his search of the van. He found more drug paraphernalia and drugs belonging to other passengers in the van. Forsythe also searched a clutch-type bag belonging to

Matejka and found a tweezers with burnt marijuana resin on the ends.

¶ 13. During a custodial search at the Portage County jail, officers found another small baggie containing marijuana in Matejka's jacket pocket. They also found two hits of LSD in her wallet. Matejka admitted she had purchased the LSD at a concert in Minneapolis.

¶ 14. Matejka was charged with two counts of misdemeanor drug possession. She moved to suppress the drug evidence, arguing that the warrantless search violated her Fourth Amendment rights because she had a reasonable expectation of privacy in her personal property in the van and never gave Forsythe permission to search her jacket. Portage County Circuit Court Judge Frederic W. Fleishauer granted the motion, concluding that the search was unreasonable under the Fourth Amendment because Matejka had not consented to the search of her individual property in the van.

¶ 15. The court of appeals, in a one-judge decision by Judge Patience D. Roggensack, reversed. *State v. Matejka*, No. 99–0070–CR, unpublished slip op. (Sept. 2, 1999). Judge Roggensack relied on United States Supreme Court precedent regarding consent and vehicle searches and concluded that it was not unreasonable for Forsythe to search Matejka's jacket based on the driver's consent.

## STANDARD OF REVIEW

¶ 16. We apply a two-step standard of review to constitutional search and seizure inquiries. *State v. Martwick*, 2000 WI 5, ¶ 21, 231 Wis. 2d 801, 604 N.W.2d 552. In reviewing a motion to suppress, we

uphold the circuit court's findings of evidentiary or historical fact unless they are clearly erroneous. *State v. Kieffer*, 217 Wis. 2d 531, 541, 577 N.W.2d 352 (1998). We then independently evaluate those facts against a constitutional standard to determine whether the search was lawful. *Martwick*, 2000 WI 5 at ¶ 18.

¶ 17. Searches conducted without a warrant are per se unreasonable under the Fourth Amendment to the United States Constitution.[2] *Katz v. United States*, 389 U.S. 347, 357 (1967); *State v. Phillips*, 218 Wis. 2d 180, 196, 577 N.W.2d 794 (1998). Exceptions to the warrant requirement include voluntary third-party consent. *Id.* There is no challenge to the voluntariness of the driver's consent to search here; the issue involves the scope of that consent. The State bears the burden of establishing, clearly and convincingly, that a warrant-

---

[2] The Fourth Amendment states:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Article I, Section 11 of the Wisconsin Constitution is identical in substance to the Fourth Amendment and provides:

The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

We traditionally follow the United States Supreme Court's interpretation of the Fourth Amendment in construing the search and seizure provision of the state constitution. *State v. Pallone*, 2000 WI 77, ¶ 28, 236 Wis. 2d 162, 613 N.W.2d 568.

less search was reasonable and in compliance with the Fourth Amendment. *Kieffer*, 217 Wis. 2d at 541–42.

## ANALYSIS

¶ 18. The question of whether a driver's consent to the search of a vehicle justifies the warrantless search of a passenger's belongings within the vehicle has not been addressed by the United States Supreme Court and is a matter of first impression in this state.[3]

---

[3] Other jurisdictions that have addressed this question have gone both ways. Some courts have concluded that searches of passengers' property based upon the driver's consent are constitutional: *United States v. Navarro*, 169 F.3d 228 (5th Cir. 1999), *cert. denied*, 528 U.S. 845 (1999) (driver's consent extended to passenger's luggage in back seat; passenger aware of driver's consent to the search, but did not object to the search of luggage); *United States v. Crain*, 33 F.3d 480 (5th Cir. 1994), *cert. denied*, 513 U.S. 1169 (1995) (passenger's paper bag found under front seat; passenger aware that driver had given consent); *United States v. Dunson*, 940 F.2d 989 (6th Cir. 1991), *cert. denied*, 503 U.S. 941 (1992) (search of passenger's duffel bag in trunk); *United States v. Anderson*, 859 F.2d 1171 (3d Cir. 1988) (search of passenger's bags in trunk and under front seat; passenger aware of search); *State v. Walton*, 565 So. 2d 381 (Fla. Dist. Ct. App. 1990) (search of passenger's luggage in trunk); *State v. Frizzel*, 975 P.2d 1187 (Idaho Ct. App. 1999) (search of passenger's backpack in truck); *State v. Rawls*, 552 So. 2d 764 (La. Ct. App. 1989) (search of passenger's luggage in trunk). However, other courts have held such searches to be unconstitutional: *United States v. Jaras*, 86 F.3d 383 (5th Cir. 1996) (search of passenger's suitcases; consenting driver informed officer that suitcases were not his); *United States v. Infante-Ruiz*, 13 F.3d 498 (1st Cir. 1994) (search of passenger's briefcase found in trunk; consenting driver informed officer that briefcase belonged to passenger); *United States v. Welch*, 4 F.3d 761 (9th Cir. 1993) (search of passenger's purse in trunk); *People v.*

¶ 19. The Supreme Court recently held that when an officer has probable cause to search a vehicle, he or she may search the vehicle itself and any items within it that are capable of containing the object of the search, including items of personal property belonging to passengers. *Wyoming v. Houghton*, 526 U.S. 295, 307 (1999); *see also State v. Pallone*, 2000 WI 77, ¶ 70, 236 Wis. 2d 162, 613 N.W.2d 568. The Supreme Court long ago held that officers may conduct warrantless searches based upon a third-party's consent, where the third party has common authority over the premises to be searched. *United States v. Matlock*, 415 U.S. 164, 169–71 (1974).

¶ 20. So we know it is constitutionally reasonable for an officer conducting a probable cause search of a vehicle to search and seize passenger property. We also know it is constitutionally reasonable for an officer conducting a third-party consent search of a premises to seize items belonging to one who is not asked to consent, provided common authority over the premises is established.

---

*James*, 645 N.E.2d 195 (Ill. 1994) (search of passenger's purse in vehicle; passenger unaware that driver had consented to vehicle search); *State v. Friedel*, 714 N.E.2d 1231 (Ind. Ct. App. 1999) (search of passenger's purse located in backseat); *State v. Caniglia*, 510 N.W.2d 372 (Neb. Ct. App. 1993) (search of passenger's makeup bag found under passenger's seat); *State v. Suazo*, 627 A.2d 1074 (N.J. 1993) (search of passenger's bag removed from trunk; officer aware that bag belonged to passenger); *State v. Williams*, 616 P.2d 1178 (Or. Ct. App. 1980) (driver's consent did not extend to search of passenger's cassette tape case; driver unaware of passenger's possessions in the vehicle); *State v. Zachodni*, 466 N.W.2d 624 (S.D. 1991) (driver's consent to vehicle search did not extend to search of wife's purse located in passenger compartment).

¶ 21. This case, however, is something of a hybrid. It involves neither a probable cause automobile search nor a third-party consent premises search. Instead, it involves a third-party consent automobile search. The question of the legality of the search is best resolved, therefore, by reference to the principles underlying both the automobile and consent exceptions to the Fourth Amendment's warrant requirement.

### Automobile Searches

■

¶ 22. The contents of automobiles generally receive reduced Fourth Amendment protection for two reasons. First, the "ready mobility" of an automobile makes it more likely that contraband or evidence of a crime will vanish during the time needed to comply with the warrant requirement. *Pallone*, 2000 WI 77 at ¶ 60 (citing *Houghton*, 526 U.S. at 304). Second, because traveling in an automobile exposes passengers and items in the vehicle to public view, there is a reduced expectation of privacy in the automobile and its contents. *Id.*

¶ 23. The Supreme Court first recognized the automobile exception in *Carroll v. United States*, 267 U.S. 132, 149–56 (1925), and concluded that law enforcement officers may search an entire motor vehicle without a warrant if there is probable cause to believe that the vehicle contains contraband. The Court clarified *Carroll* in *United States v. Ross*, 456 U.S. 798, 825 (1982), and recognized that the scope of such a probable cause search extends to "every part of the vehicle and its contents that may conceal the object of the search," including closed containers.

¶ 24. The Supreme Court recently applied the *Ross* holding to a search of passengers' property in

*Houghton*, 526 U.S. at 295–96. Sandra Houghton was a passenger in a car stopped for speeding by the Wyoming Highway Patrol. *Id.* at 297–98. During the stop, the officer noticed a syringe in the driver's pocket. *Id.* at 298. When asked about the syringe, the driver admitted he used it to take illegal drugs. *Id.* Based on the driver's admission, the officer conducted a probable cause search of the car for contraband. *Id.* During the search, the officer found Houghton's purse on the back seat and searched it, discovering drug paraphernalia and methamphetamine. *Id.*

¶ 25. Houghton challenged the search. The Court held that "police officers with probable cause to search a car may inspect passengers' belongings found in the car that are capable of concealing the object of the search." *Id.* at 307. The Court's opinion was a logical extension of the *Ross* doctrine.

¶ 26. In reaching its conclusion, the Court weighed the degree of intrusiveness of the search against the governmental interests at stake. *Id.* at 303–04. The Court noted that although searches of the person, like the *Terry*[4] weapons frisk, constitute "a severe, though brief, intrusion upon cherished personal security," the same "traumatic consequences are not to be expected" during a search of personal property in a vehicle. *Id.* at 303. The Court also observed that "[p]assengers, no less than drivers, possess a reduced expectation of privacy with regard to the property that they transport in cars," because cars traveling on public roads are exposed to public scrutiny and pervasive governmental controls. *Id.* at 303.

¶ 27. On the other side of the scale, the Court considered the government's interest in effective law

---

[4] *See Terry v. Ohio*, 392 U.S. 1 (1968).

enforcement: (1) the "ready mobility" of the automobile creates a risk that contraband will be permanently lost while authorities obtain a warrant; (2) automobile passengers will often be engaged in common enterprise with the driver and thus will have the same interests in concealing their wrongdoing; and (3) a criminal might hide contraband in a passenger's belongings as readily as in other containers in the vehicle. *Id.* at 304–05. The Court concluded that a probable cause automobile search encompasses any items of passenger property within the automobile that may contain or conceal the object of the search. *Id.* at 303, 307.

¶ 28. As we have already noted, this case is not directly governed by the automobile exception because it does not involve a search based upon probable cause. However, these cases reflect the Supreme Court's judgments about the expectation of privacy that attaches to property in an automobile, the level of intrusiveness of a personal property search, and the individual's interests as against the government's in this context. As such, they are highly relevant to our evaluation of the reasonableness of the consent-based automobile search in this case. And the cases establish that the Supreme Court considers the expectation of privacy to be much diminished, the level of intrusiveness to be slight, and the governmental interests to outweigh the individual's under circumstances such as these.[5]

---

[5] The dissent is entirely correct about the distinctions between probable cause and consent searches. We have been careful to note that this was not a probable cause based search and therefore the automobile exception does not resolve the question of its legality. However, because the ultimate inquiry is the reasonableness of the search, the principles underlying the Supreme Court's automobile exception jurisprudence are certainly noteworthy and relevant. We do not agree that this

## Consent Searches

¶ 29. The leading case on the consent search of an automobile is *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). In *Schneckloth*, an officer stopped a vehicle for equipment violations. *Id.* at 220. There were six men in the car. *Id.* One of the passengers told the officer the car belonged to his brother, who was not present. *Id.* That passenger consented to a search of the vehicle. *Id.* Under one of the rear seats, the officer discovered three stolen checks belonging to another passenger, Robert Bustamonte. *Id.*

¶ 30. The Court upheld the search, concluding that it was justified based upon the voluntary consent of the automobile owner's brother. *Id.* at 248. Although the analysis in *Schneckloth* focused on the voluntariness of the consent, its holding implicitly recognized that pursuant to the valid consent of a person with some possessory interest in the vehicle, law enforcement officers may search and seize property in the vehicle belonging to a passenger who has not consented.

¶ 31. In *Matlock*, 415 U.S. at 170–72, the Supreme Court explored the boundaries of third-party consent to search in the context of a home search. William Matlock was a suspect in a bank robbery. *Id.* at 166. Officers went to his home and arrested him in the front yard. *Id.* At the time of the arrest, the officers did

constitutes an inappropriate "mix and match" approach that impermissibly "muddles" Fourth Amendment principles. Furthermore, contrary to the dissent's suggestion, we do not "disregard[ ] the established line of analysis for consent searches" or neglect to address the driver's common authority over items of passenger property left behind in the vehicle. Rather, these issues receive extensive treatment in ¶¶ 29–42, *infra*.

not ask Matlock whether he would consent to a search of his home. *Id.* Instead, the officers were admitted by Matlock's live-in girlfriend, who gave them permission to search the home, including the bedroom she said she shared with Matlock. *Id.* During the search, the officers discovered cash in a diaper bag in the bedroom closet. *Id.*

¶ 32. The Court upheld the search, based upon a review of its precedent, including *Schneckloth, Coolidge v. New Hampshire*, 403 U.S. 443, 487–90 (1971), and *Frazier v. Cupp*, 394 U.S. 731 (1969). The Court concluded that common authority over the premises to be searched confers third-party capacity to consent:

> [W]hen the prosecution seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that consent was given by the defendant, but may show that permission to search was obtained from a third party *who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected.*

*Matlock*, 415 U.S. at 171 (emphasis added) (footnote omitted). The Court said that the inquiry into common authority does not depend upon the law of property, but upon

> mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that *the others have assumed the risk that one of their number might permit the common area to be searched.*

*Id.* at 171 n.7 (emphasis added).

¶ 33. This court adopted these principles in *Kieffer*, 217 Wis. 2d at 542, although we concluded in that

case that a father-in-law had no common authority to consent to the search of his daughter and son-in-law's apartment. The apartment was located above a detached garage behind the father-in-law's house, but he possessed neither a key nor generalized permission to enter from his daughter or son-in-law. *Id.* at 545–46.

¶ 34. Although *Matlock* concerned third-party consent to search a home, we conclude its principles are fully applicable to the evaluation of third-party consent automobile searches. *See, e.g., United States v. Beshore*, 961 F.2d 1380, 1382 (8th Cir. 1992); *Liu v. Delaware*, 628 A.2d 1376, 1383 (Del. 1993). Indeed, given that the expectation of privacy in property in an automobile is significantly less than that in a home, it is logical and reasonable to apply the *Matlock* analysis to these facts.

¶ 35. Here, the state trooper received consent to search the van from Miller, who, as the owner and driver of the vehicle, had obvious possessory authority over the vehicle and therefore the capacity to consent to its search. This authority extended in common to the jacket that Matejka brought on board and then left behind in the van, by virtue of the joint access and mutual use of the interior of the van shared by the driver and his passengers. Under *Matlock*, and by implication *Schneckloth*, Miller's consent to search the van encompassed Matejka's jacket, found inside it.

¶ 36. Matejka argues that the search was unreasonable because Miller did not have common authority over the jacket itself. However, under the circumstances of this case, as in *Matlock* and *Schneckloth*, the inquiry focuses not necessarily on the third-party's authority over the specific object in question, but the third-party's authority over the premises in which that

67

object is located. *See also Frazier*, 394 U.S. at 740 (refusing to engage in "metaphysical subtleties" regarding a third-party's authority over certain compartments in a shared duffel bag, instead concluding that the dispositive factor was that the defendant had allowed the third party to use the bag and had left it in the third-party's house, thereby assuming the risk that the third party would allow someone to look inside). This was not, for example, a locked suitcase or briefcase or other such item of private, personal property which might give rise to a different focus for the common authority analysis.[6]

¶ 37. Our conclusion is strengthened by the fact that Matejka, unlike Matlock, was present and aware of the fact that Miller had consented to the search of the common area, the interior of the van, and yet made no attempt to circumscribe the scope of the search to exclude her jacket. A consent search is subject to certain limitations in scope that do not apply to a probable cause search. The scope of consent to search may be limited by the terms of its authorization. *Walter v. United States*, 447 U.S. 649, 656 (1980). One who consents to a search "may of course delimit as he chooses the scope of the search to which he consents." *Florida v. Jimeno*, 500 U.S. 248, 252 (1991). Neither Miller nor Matejka attempted to delimit the scope of this search in any way.

¶ 38. In *Jimeno*, the United States Supreme Court established the analytical framework for evaluating the scope of a consent search of a vehicle for constitutional purposes. Enio Jimeno was stopped for a traffic violation. *Id.* at 249. The investigating officer

---

[6] Matejka's purse was searched after she was arrested.

had reason to believe that Jimeno was transporting narcotics, told Jimeno of his suspicion, and asked for consent to search the car. *Id.* After receiving Jimeno's consent, the officer opened the passenger door and observed a folded brown paper bag on the floorboard. *Id.* at 250. Inside the bag was a kilogram of cocaine. *Id.*

¶ 39. Jimeno argued that his consent to search his car did not extend to the closed paper bag inside the car. *Id.* The Court applied an objective test to measure the scope of Jimeno's consent: "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Id.* at 251. The Court, citing *Ross*, noted that the scope of a search is generally defined by its expressed object. *Id.* In *Jimeno*, it was narcotics. Thus, the Court concluded, it was objectively reasonable for the officer to conclude that Jimeno's consent to search the car included the consent to search containers within the car that might contain narcotics. *Id.*

¶ 40. The Court noted that "[a] reasonable person may be expected to know that narcotics are generally carried in some form of a container. 'Contraband goods are rarely strewn across the trunk or floor of a car.' " *Id.* (citing *Ross*, 456 U.S. at 820). The Court held that while "[a] suspect may of course delimit as he chooses the scope of the search to which he consents. . .if his consent would reasonably be understood to extend to a particular container, the Fourth Amendment provides no grounds for requiring a more explicit authorization." *Id.* at 252.

¶ 41. Applying *Jimeno*'s objective test here, we conclude that the scope of Miller's consent extended to Matejka's jacket, which she had left behind in the van. Forsythe asked Miller if there were any guns, drugs, or other contraband in the van, and then asked if he could

search. A reasonable person under these circumstances would understand that the officer intended to search for guns, drugs, and other contraband and that the search would therefore include an inspection of anything capable of holding these things.

¶ 42. Forsythe also told the passengers, including Matejka, that he had permission from the driver to search the van for contraband, and asked them about the presence of guns, drugs or contraband, thus putting them on similar notice. Matejka's jacket pockets were certainly capable of containing drugs, guns, or other contraband. Significantly here, the consent to search was not limited in any way by Miller or Matejka. Thus, the officer's search of Matejka's jacket was well within the proper scope of the consent to search in this case and was therefore reasonable.

¶ 43. Accordingly, based upon the Supreme Court's decisions in *Houghton, Schneckloth, Matlock,* and *Jimeno,* and in light of the reduced expectation of privacy that attends property in an automobile, we conclude that the search of Matejka's jacket based upon the driver's consent to search the vehicle was reasonable under the Fourth Amendment. Therefore, we affirm the court of appeals.[7]

*By the Court.*—The decision of the court of appeals is affirmed.

---

[7] Because we conclude that the search of the jacket was lawful based upon the driver's consent to the search of the van, we do not address the State's alternative justifications for the search: that the scope of Matejka's consent to the pat-down search of her person extended to her jacket left behind in the van, that Forsythe's search of Matejka's jacket was part of a lawful *Terry* frisk of Matejka, or that the search of the jacket was permissible as part of a *Terry* frisk of the van.

¶ 44. ANN WALSH BRADLEY, J. *(dissenting)*. Today's decision undermines the distinction between the consent search and the automobile exception to the warrant requirement of the Fourth Amendment. The majority takes established consent search principles and crossbreeds them with the principles underlying the automobile exception to create a heretofore unknown "hybrid" exception to the warrant requirement: the third-party automobile consent search. The result is an expansive concept of a third party's authority to consent to search the property of the passengers of a vehicle that is both unprecedented and constitutionally unsupportable.

¶ 45. At issue today is the authority of a third party to grant consent to search the property of another under the Fourth Amendment. No new formulations are needed to answer this question.

¶ 46. When examining the legitimacy of a third-party consent search, the established first inquiry is whether the third party who granted consent to search "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *United States v. Matlock*, 415 U.S. 164, 171 (1974); *State v. Kieffer*, 217 Wis. 2d 531, 547, 577 N.W.2d 352 (1998). If the third party is without actual authority, the consent may be valid if it was reasonable for an officer to conclude that such authority exists. *Illinois v. Rodriguez*, 497 U.S. 177, 188–89 (1990); *Kieffer*, 217 Wis. 2d at 548.

¶ 47. The automobile exception to the warrant requirement is not at issue in this case. The warrantless search of an automobile is justified only when the police have probable cause to believe that an automobile contains evidence of a crime. *State v. Caban*, 210 Wis. 2d 597, 607, 563 N.W.2d 501 (1997). This excep-

tion to the warrant requirement is grounded in the reduced expectation of privacy one has in an automobile and the government's interest in preventing the evidence for which probable cause exists from being whisked away while a warrant is being obtained. *California v. Carney*, 471 U.S. 386, 390–93 (1985).

¶ 48. Based solely on the fact that the consent search at issue was that of an automobile, the majority disregards the established line of analysis for consent searches. Rather than address the realities of Miller's common authority over the jacket or his relationship to it, the majority invokes the specter of an individual's reduced expectation of privacy in an automobile and an alleged overriding governmental interest. By imbuing consent search principles with those underlying the automobile exception, the majority attempts to justify the leap it makes from the driver's possessory authority over the vehicle to authority to consent to the search of items belonging to all persons within the interior of the vehicle.

¶ 49. The majority's "mix and match" approach to Fourth Amendment doctrine ignores the fundamental differences between the automobile exception to the warrant requirement and consent searches. On the one hand, the automobile exception is premised on the notion that a certain quantum of evidence, *i.e.*, probable cause, in conjunction with other considerations justifies the state's intrusion into an individual's sphere of privacy without a warrant. On the other hand, the power to conduct a consent search flows not from a governmental interest deriving from a level of suspicion that overrides an individual's privacy interests, but rather flows from the individuals themselves.

¶ 50. Courts examining the validity of a consent search are not concerned with expectations of privacy

or competing state and individual interests. The relevant considerations are the voluntariness of the consent and the authority to grant consent. The court's decision today should simply be an inquiry into the latter.

¶ 51. Moreover, the concerns implicated under the automobile exception cannot be severed from probable cause. The Supreme Court explained the automobile exception in *California v. Carney*:

> [T]he pervasive schemes of regulation, which necessarily lead to reduced expectations of privacy [in an automobile], and the exigencies attendant to ready mobility justify searches without prior recourse to the authority of a magistrate *so long as the overriding standard of probable cause is met*.

471 U.S. at 392 (emphasis added).

¶ 52. In the Fourth Amendment context, no governmental interests are relevant in the absence of probable cause (or in other contexts, reasonable suspicion). The governmental interest specific to the automobile exception is grounded in the risk that evidence or contraband *for which probable cause exists* will be driven away before a warrant can be obtained. *Id.* at 390. Logically, that governmental interest cannot exist in the absence of probable cause.

¶ 53. More importantly, by the very nature of a consent search, no governmental interests are implicated. The focus of a third-party consent search inquiry is not on the individual's relationship vis-à-vis the state, but on the individual's relationship to the property searched vis-à-vis the third party. The dispositive question is whether there is common authority to consent. No consideration of governmental interests arises in answering this question.

73

¶ 54. Similarly, a reduced expectation of privacy has no bearing in the consent search context. Again, the issue is the power to approve of the search of another's property. Implicit in the majority's holding is that one's expectation of privacy is inversely proportional to the authority of others to grant consent. I fail to see, and I am not told, how the two bear any relation to one another.

¶ 55. Rather than address these analytical inconsistencies, the majority concludes that because this case involves a search of an automobile the automobile exception principles are "highly relevant." However, in the absence of probable cause, none of these considerations is relevant and the automobile exception cases cited by the majority are wholly inapplicable.

¶ 56. Notably absent from the majority's discussion of its "hybrid" approach is any citation or analysis suggesting that the Supreme Court would sanction such an approach. Also missing from the majority opinion is a single citation to any other court that would support such an approach.

¶ 57. Applying principles sanctioned by the United States Supreme Court, there is no evidence in the record to suggest that Miller had any common authority over or any special relationship to Matejka's jacket. Nor is there anything to suggest that it was reasonable for Officer Forsythe to believe that Miller possessed such authority. In fact the evidence points to the contrary. Officer Forsythe knew the jackets that he was handing out belonged to the passengers and not to Miller himself.[1]

---

[1] I also conclude that the State's alternative arguments in support of the search fail to establish that the search was reasonable under the Fourth Amendment. The State's alternative arguments are premised upon a valid frisk of the jacket as part

¶ 58. Even if I were to accept the framework constructed by the majority in this case there are too many unanswered questions under the new automobile consent search exception to the warrant requirement. While it is suggested that an exception may exist for "private, personal property," we are given no answer as to why a jacket does not qualify for that exception.

¶ 59. An even larger question looms as to why it is incumbent upon the individual to speak up to curtail a driver's consent to search, even where the officer conducting the search is aware that the property belongs to a passenger. The majority puts the onus on the individual to confront the officer, rather than requiring the officer to carry the simple burden of requesting the consent of the passengers.

¶ 60. The majority's approach muddles Fourth Amendment principles and in the end allows an otherwise unreasonable search to be deemed reasonable. Employing an unprecedented and unconstitutional approach, the majority improperly expands a driver's authority to consent to the search of a passenger's personal property. Accordingly, I respectfully dissent.

¶ 61. I am authorized to state that SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE and WILLIAM A. BABLITCH, J. join this dissenting opinion.

of a *Terry* search of the vehicle or Matejka or part of the consent pat-down of Matejka. Yet nothing in the record suggests that it was immediately apparent to Officer Forsythe that the contents of Matejka's jacket pocket was contraband. Therefore Forsythe's removal of the contents of the pocket exceeded the permissible bounds of a pat-down search under the plain feel doctrine of *Minnesota v. Dickerson*, 508 U.S. 366 (1993).