State of Wisconsin, Plaintiff-Respondent,
v.
Gary A. Croell, Defendant-Appellant.
No. 04-2288-CR.
Court of Appeals of Wisconsin.
Opinion Filed: February 1, 2005.
¶1 CANE, C.J.[1]
Gary Croell appeals a judgment convicting him of operating while intoxicated, third offense. He argues that the trial court erroneously concluded the arresting officer had a reasonable suspicion to stop his car at 2:40 a.m. in an area where a number of break-ins had recently occurred. He further argues that the record fails to reveal sufficient objective indications of impairment to give rise to probable cause for his warrantless arrest. Because the record supports the trial court's determination, this court affirms the judgment.
¶2 At the suppression hearing, the officer testified that at 2:40 a.m., she was on patrol in an area of private cabins. She observed a vehicle's headlights and taillights going forward and backward several times on a driveway or lawn area. Because "it's suspicious at that time of night to have a vehicle going in and out of those cabins and especially going frontward and backward," she proceeded to investigate.[2] She stated that the area was one of "extra patrol" because of the private cabins and that there had been a number of break-ins in the area. The cabins were not permanently occupied but used for vacationing and hunting. Photographs of the area depict its isolated rural nature. She thought the facts indicated a break-in of some sort or a juvenile party may have occurred. The officer believed further investigation was appropriate and, as the vehicle left the area toward the highway, she followed and pulled it over.
¶3 When the officer walked over to the vehicle, she could "smell the odor of alcohol immediately." She also observed that the driver's eyes were bloodshot, his speech was slow and he admitted to drinking. The officer administered a series of field sobriety tests and, based upon her training and experience, interpreted several signs of intoxication. She arrested Croell for operating while intoxicated.
¶4 Croell brought a suppression motion challenging the lawfulness of the stop, detention and arrest. Following a suppression hearing, the court denied his motion. The court stated that although it was the last day of deer hunting season, "[n]o one hunts deer at 2:30 in the morning." The court found that the area was one of seasonal cabins and there had been many instances of burglary or vandalism in the area. The court found that the time of day was significant and was "satisfied that the officer did have more than a reasonable suspicion to make a stop when she observed the activity of a car doing something, whatever it might have been, back in an area where ordinarily you would not have been at 2:40 in the morning." The court denied Croell's suppression motion.
¶5 While an appellate court defers to a trial court's findings of historical facts unless they are clearly erroneous, whether a stop meets statutory and constitutional standards is a question of law subject to independent review. State v. Matejka, 2001 WI 5, ¶16, 241 Wis. 2d 52, 621 N.W.2d 891. In Terry v. Ohio, 392 U.S. 1, 22 (1968), the United States Supreme Court held that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." See also WIS. STAT. § 968.24.
¶6 In order to execute a valid investigatory stop, a police officer must "reasonably suspect, in light of his or her experience, that some kind of criminal activity has taken or is taking place." State v. Allen, 226 Wis. 2d 66, 71, 593 N.W.2d 504 (Ct. App. 1999). Reasonable suspicion does not require an officer to rule out innocent explanations for a defendant's conduct. "Suspicious conduct by its very nature is ambiguous, and the principal function of the investigative stop is to quickly resolve that ambiguity." State v. Waldner, 206 Wis. 2d 51, 60, 556 N.W.2d 681 (1996).
¶7 When evaluating whether a stop was reasonable, the facts must be "judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search `warrant a [person] of reasonable caution in the belief' that the action taken was appropriate." Terry, 392 U.S. at 21-22. "[T]he totality of the circumstancesthe whole picturemust be taken into account. Based upon that whole picture the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-18 (1981).
¶8 Here, the record supports the trial court's implicit finding that the officer had a particularized and objective basis for suspecting Croell of criminal activity. The officer observed Croell's vehicle being driven in an unusual manner, back and forth, in a remote and isolated area of seasonal cabins. The area had recently experienced a number of break-ins. As the court pointed out, the time of day was significant because the area was a recreational and hunting area, and "no one hunts deer at 2:30 in the morning." It was reasonable for the officer to conclude that Croell's activity was unusual and suspicious given the time of day, the remoteness of the area and the history of break-ins in the area. This court is satisfied that the officer's suspicion that criminal activity might be afoot was reasonable.
¶9 We reject Croell's analogy to State v. Fields, 2000 WI App 218, 239 Wis. 2d 38, 619 N.W.2d 279, a case in which this court reversed the denial of a suppression motion. In Fields, the officer detained a driver who simply "stayed stopped for five to ten seconds" at an intersection where there was no stop sign and no other traffic was present. Id. at 40. The officer stated he was suspicious "for the mere fact it had stopped and there was no reason." Id. at 41. The officer believed the driver was attempting to avoid the officer by waiting to see the direction the officer took. Id. Unlike Fields, this case involved an area of private cabins where there was little traffic and "extra patrol" because of recent break-ins. Also, Croell's unusual driving, going back and forth in a driveway or lawn area at 2:40 a.m., reasonably raised the officer's suspicions to more than merely a hunch of criminal activity.
¶10 Next, the record contains sufficient evidence to support a finding that the officer had probable cause to arrest Croell. Following the stop, the totality of the circumstances within the arresting officer's knowledge at the time of the arrest would lead a reasonable police officer to believe the defendant was operating a motor vehicle while under the influence of an intoxicant. See State v. Nordness, 128 Wis. 2d 15, 35, 381 N.W.2d 300 (1986). Once the officer had stopped Croell's vehicle, her observations supported probable cause. The officer observed the odor of alcohol, bloodshot eyes, slow speech, and indications of intoxication based on the field sobriety tests. Croell admitted to drinking. Under an objective review by this court, the record amply demonstrates that the officer had reasonable grounds to believe Croell had violated a traffic regulation.
By the Court.  Judgment affirmed.
NOTES
[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2). All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[2] On cross-examination, the officer stated that the vehicle appeared to be rocking back and forth; while the rocking motion may have been consistent with being stuck, she was unsure whether there was snow on the ground at that time.