STATE of Wisconsin, Plaintiff-Respondent,

v.

Robert A. RAGSDALE, Defendant-Appellant.†

Court of Appeals

*No. 03–2795–CR. Submitted on briefs June 2, 2004.—Decided July 7, 2004.*

2004 WI App 178

(Also reported in 687 N.W.2d 785.)

† Petition to review denied 10-19-2004.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Timothy T. Kay* of *Kay & Kay Law Firm*, Brookfield.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general by *Shannon Wittenberger*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Robert A. Ragsdale appeals from a judgment entered after he pled guilty to one count of felon in possession of a firearm, contrary to Wis. Stat. § 941.29(2) (2001–02).[1] Ragsdale claims the trial court erred in denying his motion to suppress. Because the trial court did not err in denying Ragsdale's suppression motion, we affirm.

## BACKGROUND

¶ 2. On August 5, 2001, at approximately 7:30 p.m., Milwaukee police officers arrived at Ragsdale's home to investigate a report that Ragsdale had pointed a shotgun at, and threatened to shoot, his neighbor. The police knocked on Ragsdale's door. Ragsdale denied that he had a gun and invited the police into the living room of his residence. According to police, Ragsdale then consented to allow the police to search for the reported weapon as long as he was present. Ragsdale accompanied Police Officer Charles Doerrer into a bedroom of the residence and Sergeant Richard Stein remained in the living room with Ragsdale's three-year-old son.

---

[1] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

¶ 3. During that time, Stein asked the three-year-old boy whether there were any guns in the house. The boy responded affirmatively and proceeded to pull open a heat register located near the baseboard of the living room. This action plainly exposed a shotgun. When the boy started to reach for the gun, the officer stopped him, fearing for the child's safety. The officers retrieved the shotgun, which was loaded.

¶ 4. Ragsdale was then arrested and charged. He pled not guilty and filed a motion seeking to suppress the evidence. He alleged that he did not give the police consent to enter or search his residence. He argued that if in fact consent was given, it was under coercion or duress. He claimed that the search to discover the gun, including questioning his minor son out of his presence, was unconstitutional.

¶ 5. A hearing on the motion was conducted. The trial court ruled that the officer's version of events was more credible, that no coercion occurred, that Ragsdale consented to entry and search and, therefore, there was no reason to grant the suppression motion. Ragsdale then pled guilty. Judgment was entered. He now appeals.

## DISCUSSION

██

¶ 6. Ragsdale contends that the police questioning of his three-year-old son while he was not present constituted an invalid search leading to the discovery of the gun. He argues that because the search was unconstitutional, the trial court should have granted his motion seeking to suppress the gun. We are not persuaded.[2]

---

[2] Ragsdale's suppression argument during the hearing in the trial court centered on Ragsdale's contention that he did not give the police consent to enter or search his house. The trial

¶ 7. A motion to suppress evidence raises a constitutional question, which presents a mixed question of fact and law. To the extent the trial court's decision involves findings of evidentiary or historical facts, those findings will not be overturned unless they are clearly erroneous. *State v. Krier*, 165 Wis. 2d 673, 676, 478 N.W.2d 63 (Ct. App. 1991). The application of constitutional and statutory principles to the facts found by the trial court, however, presents a matter for independent appellate review. *Id.*

¶ 8. Here, it is not disputed that Ragsdale consented to police entry and search of his residence in response to the gun complaint. The dispute is whether the questioning of Ragsdale's son, after Ragsdale left the three-year-old boy alone with Stein in the living room, violated the scope of Ragsdale's consent by deceit or trickery, thereby invalidating the consent to search. *See Village of Little Chute v. Walitalo*, 2002 WI App 211, ¶ 11, 256 Wis. 2d 1032, 650 N.W.2d 891 ("police cannot use deceit or trickery" to obtain voluntary consent to search); *see also State v. Wintlend*, 2002 WI App 314,

court ruled that Ragsdale did consent to police entry and search subject to the condition that Ragsdale was with police during the search. In his appeal brief, Ragsdale does not challenge the trial court's findings that he consented to police entry and a warrantless search. Rather, Ragsdale contends only that the consent to search was conditioned upon Ragsdale being present, that Ragsdale was not present during Stein's questioning of his three-year-old son, that Stein's questioning amounted to trickery and/or deceit and, as a result, renders the discovery of the shotgun an invalid, unconstitutional search. Accordingly, we address only the issue Ragsdale raises in this appeal, and affirm the trial court's findings that Ragsdale consented to police entry and search of his residence.

¶ 3, 258 Wis. 2d 875, 655 N.W.2d 745 (noting the *Walitalo* reference to "trickery or deceit").

¶ 9. Under the Fourth Amendment, a "search" occurs when law enforcement officials infringe on an expectation of privacy that society considers reasonable. *State v. Garcia*, 195 Wis. 2d 68, 73, 535 N.W.2d 124 (Ct. App. 1995). The Fourth Amendment, however, does not proscribe all state-initiated searches and seizures; rather, it prohibits only those that are unreasonable. *Florida v. Jimeno*, 500 U.S. 248, 250 (1991). For a search pursuant to consent to be constitutionally permissible, the consent must be voluntary under the totality of the circumstances and not the product of coercion. *State v. Rodgers*, 119 Wis. 2d 102, 114, 349 N.W.2d 453 (1984).

¶ 10. Here, Ragsdale contends that questioning his three-year-old son outside of his presence violated the scope of his consent and amounted to coercion. We disagree. Ragsdale consented to permit the search of his home as long as he was present. Ragsdale took one of the officers into the bedroom, leaving the other officer in the living room with his three-year-old son. One who consents to a search "may of course delimit as he chooses the scope of the search to which he consents." *Jimeno*, 500 U.S. at 252. Ragsdale did not make any attempt to prevent Stein from speaking with his son. He did not tell Stein not to talk to the boy. He did not take the boy with him into the other room. Quite the opposite, he left Stein alone with the boy without any restrictions or conditions at all. Such conduct suggests that Ragsdale did not assert any reasonable expectation of privacy prohibiting Stein from speaking with his son.

59

■

¶ 11. Moreover, we are not convinced that Stein's question to the three-year-old even constituted a search. Rather, the question constituted on-the-scene questioning of a potential witness in an ongoing investigation. Ragsdale has not provided, nor are we able to find, any authority prohibiting Stein from speaking with the boy about whether a gun was in the house. Ragsdale limited the scope of his consent to searching the premises only with Ragsdale present. He did not limit the police officers from speaking to his son while he was present. If Stein had asked the boy to show him where the gun was or to get the gun, our conclusion might be quite different because such questions might implicate the scope of Ragsdale's consent. Stein, however, did not conduct any search outside of Ragsdale's presence.

■

¶ 12. We also are unable to ascertain any indication that Stein's question involved coercion, trickery or deceit, which, if present, may invalidate the consent to search by rendering the consent involuntary. *See Walitalo*, 2002 WI App 211, ¶ 11. To coerce involves "pressure, threats, or intimidation." AMERICAN HERITAGE DICTIONARY 367 (3d ed. 1992). There is nothing in the record suggesting that Stein pressured or threatened the boy to tell him if there was a gun in the home. There is nothing to suggest that the police officers concocted an underhanded plan for one of them to remain with the son in an attempt to elicit incriminating information to locate the weapon.

¶ 13. Deceit involves using dishonesty or trickery to obtain information. *See* AMERICAN HERITAGE DICTIONARY at 482. Again, there is nothing in the record indicating that Stein's question to the boy was dishonest or that Stein tricked the boy into talking to him or giving him

information, thereby violating the scope of Ragsdale's consent. Rather, the record clearly demonstrates that Stein's question was simple and straightforward: "Are there any guns in here?" Because we have found no evidence of trickery, deceit or coercion, there is no basis to conclude that the scope of Ragsdale's consent was violated on that ground.

¶ 14. Moreover, the questioning of the boy here presents a situation analogous to the safety exceptions set forth in *New York v. Quarles*, 467 U.S. 649, 654–60 (1984), and its progeny. *Quarles* set forth a public safety exception to the requirement for *Miranda*[3] warnings. *Id.* The Supreme Court held that police were not required to give *Miranda* warnings to a person whom they reasonably suspect may have access to a weapon before they ask questions designed to locate the weapon and neutralize its danger. *Id.* at 657. Wisconsin extended the exception to include both a private safety situation and the safety of the police. *See State v. Kunkel*, 137 Wis. 2d 172, 189, 404 N.W.2d 69 (Ct. App. 1987) (rescue doctrine); *State v. Camacho*, 170 Wis. 2d 53, 72, 487 N.W.2d 67 (Ct. App. 1992) (*Quarles* exception applies to safety of police involved), *rev'd on other grounds,* 176 Wis. 2d 860, 501 N.W.2d 380 (1993). The public policy supporting the safety exceptions rests in the logic that the need to protect life and neutralize volatile situations outweighs the need for the *Miranda* rules. *Camacho,* 170 Wis. 2d at 71–72.

¶ 15. Although the instant case does not involve a *Miranda* challenge, the reasoning underlying the exception still applies. Like *Quarles*, where the suspect hid the gun, the police here were confronted with a

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

situation where, moments before they arrived, Ragsdale had pointed a shotgun at his neighbor threatening to shoot. They were told by the victim that Ragsdale was in his home, probably trying to hide the gun. When the police went to question Ragsdale, they discovered the young child. Thus, they conducted a search and investigation to determine whether a weapon was present. These circumstances clearly present a public and private safety concern—both for the safety of the victim neighbor and the minor child. It was not unreasonable or improper for Stein to ask the child if there were any guns in the house. This questioning did not constitute a search, did not exceed the scope of Ragsdale's consent, and did not constitute coercion, deceit or trickery.

¶ 16. What happened after Stein's question was solely at the child's own volition. The child proceeded to pull open a heating vent, plainly exposing a shotgun. When the child started to reach for the gun, Stein intervened. At the point in time that the child moved the vent, the gun was in plain view. When contraband is in plain view, police have a basis to seize it. *State v. Guy*, 172 Wis. 2d 86, 101–02, 492 N.W.2d 311 (1992).

¶ 17. If evidence is discovered in plain view, there is no reason to suppress its introduction at trial. For the plain view doctrine to apply, three requirements must be satisfied. *Id.* First, the evidence must be in plain view. Second, the police officer must have a lawful right of access to the object. Third, the incriminating character of the object must be immediately apparent, meaning the police must show they had probable cause to believe the object was evidence or contraband. *Id.* at

101 (citation omitted). Here, all three requirements were met. It is undisputed that Stein had a lawful right of access to the object as he was legally inside the residence. Ragsdale left Stein in the living room with his son without restricting any conversation. Stein did not ask the boy to get the gun or show him where the gun was. Rather, the boy acted on his own volition, resulting in the gun being brought into plain view. Finally, given the purpose of the police being called to the home—that Ragsdale had pointed a shotgun at his neighbor—there certainly was probable cause to believe that the gun was evidence. Consequently, because the plain view doctrine applies, the trial court did not err in denying the motion to suppress.

*By the Court.*—Judgment affirmed.