State of Wisconsin, Plaintiff-Respondent,

v.

Shaun E. Kelley, Defendant-Appellant.†

Court of Appeals

*No. 2004AP1880–CR. Submitted on briefs June 3, 2005.
—Decided July 6, 2005.*

2005 WI App 199

(Also reported in 704 N.W.2d 377.)

† Petition to review denied.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Gregory Bates* of Kenosha.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Peggy A. Lautenschlager*, attorney general and *Stephen W. Kleinmaier*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

¶ 1. WEDEMEYER, P.J. Shaun E. Kelley appeals from a judgment entered after he pled guilty to three counts of possession of child pornography, contrary to Wis. Stat. § 948.12 (2003–04). Kelley claims the trial court erred in denying his suppression motion, based on an illegal search of his apartment. Because the trial court did not err in denying the motion, we affirm.

## BACKGROUND

¶ 2. On July 25, 2002, Milwaukee Police Detectives Matthew Quist and Rickey Burems were investigating the murder of Maureen Malloy at an apartment building located at 1521 North Franklin Place in the City of Milwaukee. Malloy had lived in the apartment building. Two days earlier, she had been strangled and set on fire. The police were looking for an accelerant related to the murder and the handset part of a cordless telephone, which the murderer had taken from Malloy's apartment. During the course of the investigation, Kelley's sister, Jennifer, who also lived in the apartment building, advised police that Kelley had given the officers a false name and that he had child pornography in his apartment.

¶ 3. The detectives went to Kelley's apartment, which was also in the same building, and asked for permission to search the apartment to look for evidence related to the murder. The police had reason to suspect Kelley may have been involved because of his failure to

759

disclose his real name and because he had some caretaker role in the building, which gave him access to keys for other tenants' apartments. Kelley consented to the search. Detective Quist recorded the consent in his notebook and had Kelley sign his name in the book to acknowledge his consent. Kelley signed the name Derrick Schroeder, which was the false name he had previously given to police. At some point during the search, Quist told Kelley that they believed he was not Schroeder, but rather Kelley. Kelley admitted that he lied about his name and birth date.

¶ 4. Detective Quist then proceeded to search the apartment. In searching the bedroom, Quist looked under the bed and pulled out some loose pictures. Quist looked at the pictures and immediately recognized them to be child pornography. Quist then left the apartment to call his supervisor for instructions on how to proceed. Quist was instructed to arrest Kelley for obstruction because he provided a false name and was told that an officer experienced in child pornography cases would be sent to assist. Shortly thereafter, uniformed officers arrived and arrested Kelley. Detective Jason Smith also arrived to continue the search. Smith found additional items of child pornography in the bedroom and recovered Kelley's computer.

¶ 5. Later that evening, at the police station, Kelley signed a form consenting to the search of his residence and storage locker. He refused, however, to consent to a search of his computer. The police later obtained a search warrant for Kelley's computer.

¶ 6. Kelley was charged with three counts of possession of child pornography and one count of obstruction. He filed a motion seeking to suppress the items recovered, claiming that the warrantless search of his apartment violated his Fourth Amendment rights. He

760

argued that the police coerced him into consenting to the search by failing to disclose that they would be looking for child pornography. He claimed his consent was involuntary. The trial court conducted a hearing and heard testimony from both Kelley and Detective Quist. The trial court found Kelley's testimony to be wholly incredible. The trial court found Detective Quist's testimony to be reliable. After the hearing, the trial court ruled that Kelley's consent was voluntary and was not affected by the detectives' failure to identify all of their suspicions. The trial court ruled that Kelley consented to a general search of his apartment and did not limit that search. As a result, the trial court denied the motion. Kelley then pled guilty to the three counts of possession of child pornography. Judgment was entered. He now appeals.

## DISCUSSION

¶ 7. Kelley contends that the trial court should have granted his motion seeking suppression of the evidence obtained during the warrantless search of his apartment. He claims both that the police coerced him into consenting to the search by disclosing only that they were looking for evidence related to the Malloy murder and that the police exceeded the scope of the consent by looking under the bed for child pornography. The State responds that Kelley's consent was valid and that the police did not exceed the scope of the consent. The trial court agreed with the State. We conclude that the trial court did not err in denying the motion to suppress.

¶ 8. In reviewing a trial court's decision on a suppression motion, we apply a mixed standard of review. We will uphold the trial court's factual findings

unless they are clearly erroneous, but will independently evaluate those facts under the constitutional standard to determine whether the search violated the Fourth Amendment. *State v. Matejka*, 2001 WI 5, ¶ 16, 241 Wis. 2d 52, 621 N.W.2d 891. Searches inside a person's home without a warrant are presumptively unreasonable. *State v. Phillips*, 218 Wis. 2d 180, 196, 577 N.W.2d 794 (1998). There are several exceptions to that dictate, one of which is presented in this case—a warrantless search is constitutionally permissible where consent to search has been granted. *Id.*

¶ 9. There is no dispute here that Kelley consented to the search of his apartment. He acknowledged his consent by signing Detective Quist's book. The question is whether his consent was voluntarily given. He argues it was not because of the information presented to him by the detectives when they requested permission to search. Kelley argues he was coerced because the officers stated only that they were looking for evidence in the murder investigation and failed to disclose that they suspected he may have had child pornography in his apartment.

¶ 10. The State has the burden of proving by clear and convincing evidence that Kelley's consent was voluntary. *See id.* at 197. "The test for voluntariness is whether consent to search was given in the absence of duress or coercion, either express or implied." *Id.* In making this determination, we look to the totality of the circumstances. *Id.* at 198.

¶ 11. Here, the detectives identified the principal purpose for the investigation, namely looking for evidence related to the murder. Kelley consented to a general search of his apartment based on this information. He did not limit the search in any way. He was

762

present during the time that Quist was searching the bedroom. He could have limited or withdrawn his consent when he observed Quist searching under the bed. *See Florida v. Jimeno*, 500 U.S. 248, 252 (1991). He did not.

¶ 12. Kelley contends that the police should have disclosed that they had reason to believe he had child pornography in his apartment. We are not persuaded that the detectives' failure to disclose all their suspicions invalidated an otherwise validly obtained consent. This was not a case of deception or false pretext. The detectives went to search Kelley's apartment because they were investigating a murder. They had legitimate suspicions based on the circumstances present that he may have been involved in the murder. They disclosed the purpose of this investigation. This was not a case where the officers fabricated a story about a non-existent murder to sneak their way into Kelley's apartment in order to look for child pornography. They had valid reasons to believe a search of his apartment was pertinent to the actual murder investigation. Thus, the failure of the officers to disclose secondary suspicions did not result in coercion or an involuntary consent.

¶ 13. Kelley also argues that the search violated the scope of consent. He contends that an accelerant and phone handset could not have been found under his bed and therefore that place should not have been searched. We disagree. The detectives provided Kelley with a definition for the scope of the search—they told him the purpose of the investigation and what they were looking for. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typi-

cal reasonable person have understood by the exchange between the officer and the suspect?" *Id.*, 500 U.S. at 251. "The scope of a search is generally defined by its expressed object." *Id.* The police are permitted to search where the objects sought can be found. *See Matejka*, 241 Wis. 2d 52, ¶ 41.

¶ 14. Here, the police were searching for a telephone handset and an accelerant. Certainly, either object could be easily hidden beneath a bed. Moreover, Kelley did not limit the scope of his consent—rather, he authorized a general consent to search the entire apartment. He could have limited the scope of the consent immediately or at any time thereafter. He could have said, you can look everywhere except under the bed. The consent to search here was unqualified. Kelley was present when Quist was searching in the bedroom and discovered the photos under the bed. He made no objection. The failure to object further supports our conclusion that the detective did not exceed the scope of the consent when he searched under the bed.

¶ 15. An officer has the right to access objects in plain view while searching within the scope of the consent. *See State v. Johnson*, 187 Wis. 2d 237, 242, 522 N.W.2d 588 (Ct. App. 1994). In order for the plain view doctrine to apply, three requirements must be met:

> First, the evidence must be in plain view. Second, the police officer must have a lawful right of access to the object. Third, the incriminating character of the object must be immediately apparent, meaning the police must show they had probable cause to believe the object was evidence or contraband.

*State v. Ragsdale*, 2004 WI App 178, ¶ 17, 276 Wis. 2d 52, 687 N.W.2d 785. Here, all three elements were

satisfied. The officer searched under the bed, where a phone handset could have been hidden. He discovered several photos, which he recognized immediately to be child pornography. Thus, the pictures were lawfully seized.

¶ 16. The trial court made many findings of fact relating to the search and consent. Kelley has not challenged any of those findings in this appeal. Some of those facts further support our conclusion that Kelley's consent was not invalidated by the detective's failure to disclose suspicions about child pornography and that the detective did not exceed the scope of the search. For example, the trial court found, based on its observations of Kelley, that he was not the type of person who would have sat idly by while a very limited search suddenly blossomed into a much more detailed search. Yet, the record demonstrates that Kelley stood by for a considerable period of time when it was obvious that a thorough search of his bedroom was being conducted and he stood by without raising an objection or indicating that there was some confusion about the scope of the search. In fact, even after Kelley was arrested and taken to the station, he signed another consent to search his apartment and storage locker. He signed this consent even after being advised that the police had discovered child pornography during their search. Kelley's only limitation on consent at that point was refusing to allow the police to search his computer.

¶ 17. Based on the foregoing, we conclude that the detectives did not exceed the scope of the search to which Kelley consented. Accordingly, the trial court did not err in denying his motion to suppress.

*By the Court.*—Judgment affirmed.