COURT OF APPEALS
DECISION
DATED AND FILED

March 17, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP700-CR**

Cir. Ct. No. **2017CF4**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

STEVEN LEE GAUGER,

DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Crawford County: LYNN M. RIDER, Judge. *Reversed and cause remanded for further proceedings.*

Before Blanchard, Graham and Nashold, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM.  Steven Gauger appeals a judgment of conviction for possession with intent to deliver methamphetamine.  Gauger argues that the circuit court erroneously denied his motion to suppress evidence obtained as the result of an encounter that police had with Gauger outside of a convenience store. We agree and reverse.

## BACKGROUND

¶2     The background facts are undisputed.  In response to tips that Gauger was selling marijuana in the area and methamphetamine in local taverns, on January 7, 2017, members of a joint police task force responded to a convenience store in Prairie du Chien where Gauger was reported to be.  Deputy Joe Breeser and his police dog were the first to arrive on the scene.  Breeser pulled up to the store in his fully marked police vehicle, but did not have his emergency lights or siren on at the time he arrived.

¶3     Breeser knew what vehicle Gauger drove and saw it parked in the convenience store parking lot.  Breeser parked next to Gauger, with one empty stall between the two vehicles.  Breeser then exited his vehicle, wearing his full uniform and duty belt.  As Breeser got out of his vehicle, he made immediate contact with Gauger, who had exited the store carrying a large case of water bottles and some food.  At the time of the encounter, Gauger was standing approximately two feet from the driver's side of his vehicle facing his vehicle as though he was about to enter it.  Breeser asked Gauger a series of brief questions, to which Gauger offered brief answers:  how Gauger was doing, what he was up to, and where he was living.  As recorded on Breeser's body cam, Breeser and Gauger then had the following exchange:

2

[BREESER:] Is there anything in the vehicle tonight you shouldn't have?

[GAUGER:] No. Why?

[BREESER:] Knives, guns, drugs?

[GAUGER:] No. Why? What's up?

[BREESER:] Would you have any objection if I ran my dog around your car?

[GAUGER:] What did I do? Whoa, this is heavy [referring to the items he was holding].

[BREESER:] Okay. You can set that down if you want.

¶4 Immediately after this exchange, Gauger turned around and placed the water and food that he was carrying on the ground. Breeser then walked back toward his vehicle. At the same time, Lieutenants Ryan Fradette and Jaden McCullick pulled into the parking lot in an unmarked police car, with no siren or emergency lights activated, and parked on the other end of the convenience store. Breeser retrieved his police dog from his vehicle, put the dog on a leash, and then walked the dog towards the rear of Gauger's vehicle to conduct a dog sniff.

¶5 Breeser testified that, immediately after the dog exited the vehicle, he observed the following "behavioral changes" in the dog: tail wagging, harder breathing, and becoming excited. The body cam recording shows that, approximately 15 seconds after emerging from the police vehicle, the dog placed its front paws on the tailgate of Gauger's vehicle and scratched on the tailgate, which Deputy Breeser described as a "final response" and a "final indication for the presence of one or more odors of narcotics in the vehicle." The recording and Breeser's testimony also show that, approximately 15 seconds after scratching on the tailgate, the dog put its front paws on and scratched on the rear passenger door of Gauger's vehicle, which Breeser also described as a "final response." Breeser

also testified that the dog "began alerting through numerous behavioral changes," but that the "final response" for the presence of narcotics was the dog's scratching on the vehicle. We construe Breeser's testimony to mean that a determinative alert did not occur until the dog scratched on the vehicle and not beforehand. The recording supports this interpretation.[1]

¶6     While Breeser supervised the dog sniff, Gauger turned around and started pacing, walking slightly away from his vehicle, in front of Breeser's squad car. Gauger then took his keys out of his pocket and used the remote function to unlock his vehicle without being directed or asked to do so by police, and then stood and watched what was occurring with his vehicle.

¶7     State Patrol Trooper Casey Updike also responded to the convenience store. Updike parked his unmarked police vehicle approximately four car stalls from where Gauger was parked. Updike, who was in full police uniform, exited his vehicle and walked toward the front of the store, while the dog sniff was in progress. Updike observed the dog scratch on a door of Gauger's vehicle, which Updike construed as a positive alert. Updike then approached Gauger, who was standing approximately 10 feet away from his own vehicle, looking at the vehicle.

¶8     Updike asked Gauger if he had any weapons on his person or in his vehicle. Gauger stated that he had a CCW permit but denied having any weapons. Gauger then consented to a pat-down. During the pat-down, Updike felt hard

---

[1] The circuit court did not make an explicit or implicit finding as to when the dog initially alerted, but only generally observed that the dog "hit on the vehicle," which the court stated established probable cause.

4

objects in both of Gauger's front pockets. Updike asked Gauger about the objects. Gauger responded that he had a marijuana pipe and marijuana, and then, without prompting from Updike, Gauger handed a pipe and marijuana to Updike. Updike asked Gauger if he had recently used marijuana, and Gauger admitted that he had smoked marijuana approximately two hours earlier. Updike then placed Gauger under arrest.

¶9     After completing supervision of the dog sniff, Breeser informed one of the other officers that the dog had alerted on Gauger's vehicle for the presence of narcotics. Breeser and the other officer then searched Gauger's vehicle, in which they found marijuana and methamphetamine.

¶10     The State charged Gauger with possession with intent to deliver methamphetamine and possession with intent to deliver tetrahydrocannabinols. Gauger filed a motion to suppress, arguing that he was illegally seized by Breeser and that any evidence obtained as a result should be excluded.

¶11     The circuit court held a hearing and denied Gauger's motion. The court stated that there was no delay in bringing the dog to the convenience store and that it took less than a minute to conduct the dog sniff, which was "not a big seizure of Mr. Gauger's time and freedom."[2] The court then stated: "And once

---

[2] This determination that Gauger's seizure without reasonable suspicion was constitutionally permissible because it lasted only a short period of time is not consistent with the Fourth Amendment. *See State v. Young*, 2006 WI 98, ¶¶20-22, 294 Wis. 2d 1, 717 N.W.2d 729 (recognizing only two types of permissible seizures of a person: an investigatory stop under *Terry v. Ohio*, 392 U.S. 1 (1968), supported by reasonable suspicion and an arrest supported by probable cause); *see also Rodriguez v. United States*, 575 U.S. 348, 353, 356-57 (2015) (rejecting concept of "an acceptable '*de minimis* intrusion'" in context of a continued seizure of driver to conduct a dog sniff following completion of a traffic stop). And, as discussed in the text at ¶¶17-20, the State does not argue to the contrary.

that dog hit on the vehicle, as we all know, that is enough probable cause for the search."

¶12 Following the denial of his motion to suppress, Gauger pled no contest to the methamphetamine count; the other count was dismissed but read in.[3] Gauger appeals.

**DISCUSSION**

¶13 The sole issue presented on appeal is whether the circuit court properly denied Gauger's motion to suppress. We review a circuit court's decision on a suppression motion under a mixed standard of review. *State v. Kelley*, 2005 WI App 199, ¶8, 285 Wis. 2d 756, 704 N.W.2d 377. "'We will uphold the court's factual findings unless they are clearly erroneous, but we independently apply constitutional principles to those facts.'" *State v. Ionescu*, 2019 WI App 68, ¶8, 389 Wis. 2d 586, 937 N.W.2d 90 (quoted source omitted). Here, the parties do not dispute the underlying facts; thus, we apply the relevant constitutional principles to the facts. *See id.*

¶14 The Fourth Amendment to the United States Constitution and article I, section 11 of the Wisconsin Constitution protect citizens against unreasonable seizures. *County of Grant v. Vogt*, 2014 WI 76, ¶18, 356 Wis. 2d 343, 850 N.W.2d 253. Our courts have recognized two types of permissible seizures of a person: an investigatory *Terry* stop[4] supported by reasonable suspicion and an

---

[3] Gauger also pled guilty to the civil offense of operating with a restricted controlled substance as a first offense.

[4] *See Terry*, 392 U.S. 1.

6

arrest supported by probable cause. *See generally* **State v. Young**, 2006 WI 98, ¶¶20-22, 294 Wis. 2d 1, 717 N.W.2d 729. However, not all citizen-police encounters are seizures. **Vogt**, 356 Wis. 2d 343, ¶26. Accordingly, the applicable constitutional protections "are not implicated until a government agent 'seizes' a person." **Id.**, ¶19.

¶15 Determination of whether police have seized a person is governed by the **Mendenhall** test.[5] **Id.**, ¶30. "The [**Mendenhall**] test is objective and considers whether an innocent reasonable person, rather than the specific defendant, would feel free to leave under the circumstances." **Id.** This inquiry "'is necessarily imprecise because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation.'" **State v. Williams**, 2002 WI 94, ¶23, 255 Wis. 2d 1, 646 N.W.2d 834 (quoting **Michigan v. Chesternut**, 486 U.S. 567, 573 (1988)). When examining the totality of the circumstances to determine whether a seizure has occurred, relevant considerations may include: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *See* **United States v. Mendenhall**, 446 U.S. 544, 554 (1980).

¶16 The resolution of this case turns on when the seizure of Gauger occurred—that is, whether Gauger was seized at the moment when police initiated the dog sniff, or whether the seizure did not occur until later, after the dog alerted on the vehicle. Gauger argues that police unlawfully seized him without the

---

[5] *See* **United States v. Mendenhall**, 446 U.S. 544 (1980).

requisite reasonable suspicion when police initiated the dog sniff after Gauger failed to give his consent.[6] We emphasize at the outset that the circuit court did not find, nor does the State argue, that law enforcement had either reasonable suspicion or consent to detain Gauger to conduct the dog sniff. Indeed, the State, by failing to make any argument in opposition to Gauger's assertion in his appellate brief that police had no reasonable suspicion or consent, concedes these points.[7] *See Propp v. Sauk Cty. Bd. of Adjustment*, 2010 WI App 25, ¶8, 323 Wis. 2d 495, 779 N.W.2d 705 ("[A] proposition asserted on appeal and not disputed is taken as admitted." (citation omitted)).

¶17 Instead, the State argues that Gauger was not seized until after probable cause was established by the dog alerting on Gauger's vehicle. Relying on *Mendenhall*, the State points out that, prior to the dog alert: (1) Gauger was confronted by only one officer; (2) police did not activate their emergency lights or sirens; (3) Gauger's vehicle was not blocked in by police vehicles; (4) Breeser did not use language suggesting that compliance with his requests was required; (5) Gauger walked a short distance from his vehicle without being stopped, which, according to the State, "demonstrat[ed] that he did not feel unable to leave"; and (6) police did not subject Gauger to any nonconsensual physical contact. Thus,

---

[6] Gauger argues in the alternative that the police dog's alert on his vehicle did not give rise to probable cause supporting the search of the vehicle. Because our resolution of the seizure issue is dispositive, we need not resolve the issue of whether probable cause was established or, if so, at what moment. *See Barrows v. American Family Ins. Co.*, 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 (2013) ("An appellate court need not address every issue raised by the parties when one issue is dispositive."). All that matters on this point under our analysis is that police lacked probable cause or reasonable suspicion at any time before they initiated the dog sniff that resulted in the detention.

[7] In response to Gauger's argument on appeal that the informant tips did not provide reasonable suspicion, the State asserts only that Gauger's argument is "inapposite" because Gauger was not seized until after probable cause was established by the dog alert.

according to the State, the totality of the circumstances "would not lead a reasonable person to feel compelled to stay" before the dog alerted on Gauger's vehicle and probable cause was established.

¶18    However, the State does not explicitly take a position as to when the dog alert establishing probable cause occurred. The State asserts: "[A]s Deputy Breeser explained, his canine's behavior *immediately* changed when it approached Gauger's vehicle, including harder breathing, excited acts, wagging its tail, and a 'final response' of scratching at the tailgate, indicating the detection of drugs in the vehicle." The State may mean to argue that an alert establishing probable cause occurred immediately upon the dog's release from the police vehicle and *prior to* the dog's scratching the tailgate. Notably, the prosecutor made no such argument in the circuit court, and for good reason because there is insufficient evidence in the record to support this conclusion.

¶19    As a result, to the extent that the State's argument relies on the premise that the dog's conduct prior to scratching on the tailgate constituted probable cause, that argument fails because its premise is not supported by the record. "Where a violation of the fourth amendment right against an unreasonable search and seizure is asserted, the burden of proof upon the motion to suppress is upon the state." *State v. Taylor*, 60 Wis. 2d 506, 519, 210 N.W.2d 873 (1973). Thus, if the State's response to Gauger's Fourth Amendment challenge is that Gauger was not unlawfully seized at any point during the dog sniff because probable cause was established immediately upon the dog emerging from the police vehicle, then the State had the burden of establishing the facts to support that premise at the suppression hearing. The State failed to do so.

¶20 In the alternative, the State may mean to argue that, under *Mendenhall*, Gauger was not seized before the scratch on the tailgate. We reject this argument. We conclude, based on the clear evidence in the recording and not undermined by any testimony, that Gauger was unlawfully seized, at a minimum, for the approximately 15-second time period between Breeser's retrieval of the dog from the police vehicle for the obvious purpose of a sniff of the vehicle and the first conduct of the dog that could be construed as an alert—scratching on the tailgate. During this time period a reasonable person in Gauger's position would not have "believed he or she was free to leave or otherwise terminate the encounter." *See State v. Luebeck*, 2006 WI App 87, ¶7, 292 Wis. 2d 748, 715 N.W.2d 639.

¶21 As set forth above, as Gauger was just about to enter his car, Breeser parked his fully marked squad car two parking spaces from Gauger's vehicle and approached Gauger in full police uniform and duty belt. Breeser began the encounter by asking Gauger a series of questions that culminated in asking for Gauger's consent to allow Breeser to run his "dog around [Gauger's] vehicle." Gauger did not consent. Nonetheless, Breeser immediately retrieved his police dog and initiated the dog sniff, while Gauger, naturally enough, stood by, unable to reasonably drive away.

¶22 Under these circumstances, a reasonable person would have understood Breeser's initiation of a dog sniff without consent as conveying that the person's continued presence was required while the dog sniff was completed. *See State v. House*, 2013 WI App 111, ¶10, 350 Wis. 2d 478, 837 N.W.2d 645 ("Because [the officer] gave [the defendant] no choice in the matter when he conducted the dog sniff, a reasonable person in [the defendant's] place would not have felt free to leave."); *see also* 4 WAYNE R. LAFAVE, SEARCH AND SEIZURE: A

10

TREATISE ON THE FOURTH AMENDMENT § 9.4(a), at 599 (5th ed. 2012) (a police officer may effect a seizure by revealing to a "suspect that he has set in motion certain investigative procedures that contemplate the suspect's continued presence"). Knowing that a police officer and police dog had begun a search of the outside of his vehicle, a reasonable person in Gauger's position would not have felt "free to disregard the police and go about his business" by simply driving away. *See **State v. Griffith***, 2000 WI 72, ¶39, 236 Wis. 2d 48, 613 N.W.2d 72 (quoting ***Florida v. Bostick***, 501 U.S. 429, 434 (1991) (internal quotation marks omitted)); *see also **Vogt***, 356 Wis. 2d 343, ¶32 n.15 (blocking car's path constitutes a seizure). As a practical matter, driving away under these circumstances posed an obvious risk of endangering the safety of both the police officer and the police dog.[8] A reasonable person would not have taken such an unnecessary risk and would not have felt free to leave once Breeser retrieved the police dog from his vehicle and initiated the dog sniff. And, without this seizure, there is every indication that Gauger would have simply entered his vehicle and driven away, as he was in the process of doing when first approached by police. Thus, Gauger was unlawfully seized, and evidence obtained as a result of that seizure should have been suppressed.[9]

---

[8] Notably, animals used by law enforcement or fire departments are subject to special protections. *See* WIS. STAT. § 951.095 (2017-18). For example, a person who frightens, intimidates, threatens, abuses, harasses, strikes, shoves, kicks, or "otherwise subject[s] [a police or fire department] animal to physical contact" has committed a crime, with a penalty ranging from a Class B forfeiture to a Class H felony. *See* § 951.095(1)(a) and (b); WIS. STAT. § 951.18(2m) (2017-18).

[9] The State concedes that, if Gauger was seized during the dog sniff, then "any derivative evidence gained from a search following an unlawful seizure would also be suppressed via the fruit of the poisonous tree doctrine."

## CONCLUSION

¶23    For the reasons stated above, we reverse the circuit court's judgment and remand for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded for further proceedings.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5. (2017-18).