COURT OF APPEALS
DECISION
DATED AND FILED

June 7, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No. 2020AP1526**

**STATE OF WISCONSIN**

Cir. Ct. Nos. 2018TR248
2018TR277

**IN COURT OF APPEALS
DISTRICT III**

COUNTY OF BUFFALO,

   PLAINTIFF-RESPONDENT,

 V.

KEVIN J. RICH,

   DEFENDANT-APPELLANT.

---

APPEAL from an order of the circuit court for Buffalo County: RIAN RADTKE, Judge. *Affirmed*.

¶1   STARK, P.J.[1]   Kevin Rich appeals from an order entered following a bench trial, finding him guilty of operating a motor vehicle while intoxicated

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

("OWI"), as a first offense, and operating a motor vehicle with a prohibited alcohol concentration ("PAC"), also as a first offense.[2] Rich argues that the circuit court erred in denying his motions to suppress evidence because the arresting deputy: (1) lacked reasonable suspicion to believe that Rich had committed, or was committing an offense sufficient to justify the traffic stop; (2) lacked reasonable suspicion to believe that Rich was impaired due to the consumption of alcohol, and therefore improperly expanded the scope of the traffic stop by requiring Rich to perform field sobriety tests; and (3) exceeded the scope of Rich's consent to an evidentiary breath test by taking more than one breath sample. We reject each of Rich's arguments and affirm.

## BACKGROUND

¶2 Early in the morning on February 11, 2018, Deputy Mitchell Zastrow of the Buffalo County Sheriff's Office stopped the Jeep that Rich was operating after observing its erratic driving. Rich performed field sobriety tests and Zastrow subsequently placed Rich under arrest for OWI. After being read the Informing the Accused form, Rich consented to a breath test. It took Rich several attempts to provide sufficient samples and successfully complete the test. Rich was subsequently cited in Buffalo County case No. 2018TR277 with OWI, first offense, and he received a citation for PAC, also as a first offense, in Buffalo County case No. 2018TR248.

¶3 Rich brought two motions to suppress evidence related to his arrest. In the first motion he argued that (1) Zastrow lacked reasonable suspicion that

---

[2] Following trial, the PAC charge was merged and dismissed.

Rich had committed a traffic violation, and (2) Zastrow did not have an objectively reasonable suspicion—beyond the odor of alcohol—that Rich was under the influence of an intoxicant, and Zastrow therefore improperly expanded the scope of the stop to have Rich perform standardized field sobriety tests ("SFSTs"). In a separate suppression motion, Rich argued that he consented to a single evidentiary test of his breath but that two tests occurred, resulting in an improper search that exceeded the scope of his consent.

¶4 The circuit court held a hearing on Rich's motions, and Zastrow testified. Zastrow explained that on February 11, 2018, while positioned in a parking lot near the intersection of State Highways 54 and 35, he made a number of observations of a Jeep that he later learned was operated by Rich. Highway 35 has two lanes traveling in both directions for some distance north of the intersection at issue. The two northbound lanes then merge into a single lane some distance north of the intersection. The Jeep stopped at a red light behind a sedan. When the light turned green, the sedan made a left-hand turn northbound on Highway 35, while the Jeep remained at the light for a brief period of time. The sedan made its turn into the rightmost of the two northbound lanes. The Jeep eventually followed the sedan, making a left-hand turn into the same lane and accelerating such that Zastrow recounted he "could hear the engine revving through the closed windows of my squad car." The engine continued to rev until the Jeep was "approximately a quarter of a car length behind the sedan."

¶5 Zastrow testified that the Jeep then "bolted over into the second lane," but because the left lane was ending almost immediately thereafter, the Jeep "jolted back over into the right lane back behind the sedan and proceeded to continue following the sedan at approximately a quarter of length behind it." Zastrow followed the vehicles and then turned on his emergency lights and

stopped the Jeep. After pulling over, Rich admitted that his attempt to pass the sedan had been a bad idea and that he "recalled being close to the sedan." Zastrow recounted that when Rich spoke, he "could smell a strong odor of intoxicants emitting from his breath." Zastrow asked Rich about the odor, and Rich stated that he had consumed two beers. Zastrow then conducted SFSTs and ultimately placed Rich under arrest.

¶6    Zastrow explained that prior to transporting Rich to the Buffalo County Jail, he read him the Informing the Accused form and Rich consented to a test of his breath. After arriving at the jail, Zastrow explained the breath-test procedure to Rich. Zastrow testified that he "typically explain[s] to the individuals that we would need two sufficient samples" as a part of the breath test, but he could not recall whether he had explained this fact to Rich.

¶7    Zastrow recounted that in attempting to obtain the first breath test sample, Rich provided three insufficient samples—due either to a machine error or Rich failing to blow for a long enough period of time. On his fourth attempt, Rich was able to provide a sufficient sample. After one more insufficient sample, Rich provided a second sufficient sample. Zastrow testified that Rich did not revoke his consent to the breath test at any point during the testing process. Zastrow was asked "From your training, from how you were trained in this particular circumstance, was there more than one test that was conducted on Mr. Rich?" Zastrow responded, "There was not."

¶8    The circuit court denied Rich's suppression motions. The court found that Zastrow's testimony was credible and that he had reasonable suspicion to believe that Rich had committed or was committing an offense justifying the traffic stop, as Rich had been following the preceding vehicle too closely and

changed lanes "in a jolting manner." The court rejected Rich's argument that his close following was "normal when passing," reasoning that on the portion of the road where the events occurred, there were two lanes available to Rich. Accordingly, Rich could have moved into the passing lane much earlier than he did and he therefore did not need to follow the sedan so closely.

¶9    Next, the circuit court rejected Rich's argument that Zastrow did not have a reasonable suspicion that Rich was impaired due to alcohol, as opposed to merely having consumed alcohol. The court recounted that Zastrow smelled a strong odor of intoxicants, and Rich admitted that he had consumed two beers. In addition, the court emphasized Rich's "problematic driving behavior," including Rich delaying before leaving the stoplight, revving his engine when leaving the stoplight, following the sedan too closely, and changing lanes in a jolting manner. The court concluded that "all of these facts combined satisfy reasonable suspicion to justify requesting the [SFSTs] in this matter."

¶10    Finally, the circuit court rejected Rich's argument that his providing multiple breath samples constituted an illegal search in that law enforcement exceeded the scope of Rich's consent. The court found no facts supporting Rich's argument that he only consented to one breath sample or a sequence of samples. The court cited the Informing the Accused form—which Zastrow read to Rich prior to Rich consenting to the breath test—as stating "Law enforcement will be requesting one or more samples of breath." In addition, the court found that Rich consented to the breath test, that he did not revoke his consent, and that "[t]here are no facts to suggest that [Rich] intended to limit his consent to breath tests in any way." The court found that six samples were provided, resulting in a completed breath test, and that the "search of [Rich's] breath did not go beyond the scope of consent."

¶11 At a bench trial, rather than calling live witnesses, the parties provided the circuit court with written stipulated facts. Based upon the stipulated facts, the court found Rich guilty on both counts. The court merged the PAC citation with the OWI citation and dismissed the PAC case. As to the OWI matter, the court ordered a civil forfeiture in the amount of $811.50, revoked Rich's license for a period of six months, and required him to complete an alcohol and other drug abuse assessment in addition to a driver safety plan. Rich now appeals.

## DISCUSSION

¶12 On appeal, Rich argues that the circuit court erred in denying his suppression motions. When evaluating a court's decision on a motion to suppress, we uphold the court's findings of fact unless they are clearly erroneous. *State v. Dobbs*, 2020 WI 64, ¶28, 392 Wis. 2d 505, 945 N.W.2d 609. We then independently apply relevant constitutional principles to those facts. *Id.*

*I. Initial traffic stop*

¶13 Rich first argues that the circuit court erred in denying his motion to suppress because Zastrow lacked the requisite reasonable suspicion to perform a traffic stop. Reasonable suspicion that a traffic law has been or is being violated is sufficient to justify a traffic stop. *State v. Houghton*, 2015 WI 79, ¶30, 364 Wis. 2d 234, 868 N.W.2d 143. "The question of what constitutes reasonable suspicion is a common-sense test: under all the facts and circumstances present, what would a reasonable police officer reasonably suspect in light of his or her training and experience[?]" *State v. Colstad*, 2003 WI App 25, ¶8, 260 Wis. 2d 406, 659 N.W.2d 394.

¶14    We conclude that Zastrow had reasonable suspicion to believe that Rich had committed a traffic violation. WISCONSIN STAT. § 346.14(1m) prohibits following another vehicle more closely than is "reasonable and prudent," and the circuit court clearly found that Rich drove too closely to the preceding vehicle. It also rejected his justification that his driving and passing attempt was "normal" given the circumstances. Based on the court's findings, it is evident Rich violated § 346.14(1m). In addition, the court found credible Zastrow's testimony that he directly observed Rich driving erratically, revving his engine loudly, and making an unnecessarily abrupt passing attempt despite the earlier availability of a passing lane.

¶15    Rich cites *Hibner v. Lindauer*, 18 Wis. 2d 451, 456, 118 N.W.2d 873 (1963), for the proposition that there is no precise definition of driving "too close," and he asserts that the determination is a question of fact involving a number of considerations. He argues that Zastrow only observed the distance between the cars decrease to a quarter of a car length because he had been attempting to pass the sedan in front of him and he therefore asserts that he had not been following the sedan too closely.

¶16    We agree that whether a car is driving "too close" to another vehicle is a question of fact. Here, the circuit court made an explicit factual finding that Rich had been "following a car in front of him too close." That finding was supported by Zastrow's testimony, which the court found to be credible. Again, Zastrow testified that Rich "sped up to the first car and got to a quarter vehicle length behind the first vehicle," at "approximately five to six feet distance," before jolting between lanes and attempting to pass the sedan. The court's finding that Rich was driving too close to the car in front of him is not clearly erroneous.

7

Thus, Zastrow had reasonable suspicion to believe that Rich had violated WIS. STAT. § 346.14(1m).

¶17    Even if we were to give credence to Rich's argument that he was following the sedan closely in order to pass it—a version of events the circuit court rejected as making "no sense"—Zastrow testified that after failing to pass the vehicle, Rich "proceeded to continue following the sedan at approximately a quarter of length behind it." Therefore, Rich cannot rely upon his attempt to pass to excuse his traffic violation.

*II. Reasonable suspicion of impairment*

¶18    Rich next argues that the odor of alcohol on his breath evidenced only that he had consumed alcohol and it did not provide Zastrow with reasonable suspicion that he was impaired. Rich therefore asserts that Zastrow improperly expanded the scope of the traffic stop to conduct SFSTs.

¶19    A deputy may extend a lawful stop after the original basis for the stop has been resolved only if the deputy learns of new facts during the stop that give rise to a reasonable articulable suspicion that the person under investigation has committed or is committing an offense or offenses separate from that which prompted the stop. *Colstad*, 260 Wis. 2d 406, ¶19. In analyzing the constitutionality of the new investigation, "[t]he validity of the extension is tested in the same manner, and under the same criteria, as the initial stop." *State v. Betow*, 226 Wis. 2d 90, 94-95, 593 N.W.2d 499 (Ct. App. 1999). The government carries the burden of proving the constitutionality of a Fourth Amendment seizure. *State v. Post*, 2007 WI 60, ¶12, 301 Wis. 2d 1, 733 N.W.2d 634. We must therefore determine whether Buffalo County (the "County") proved that Zastrow discovered information subsequent to the initial stop which, when combined with

8

information already acquired, provided Zastrow with reasonable suspicion that Rich was driving while under the influence of an intoxicant. *See Colstad*, 260 Wis. 2d 406, ¶19.

¶20 We conclude the County met its burden. The record supports the circuit court's finding that the odor of alcohol on Rich's breath and Rich's admission of having consumed two beers, when taken together with the "problematic driving behavior" observed by Zastrow, provided Zastrow with reasonable suspicion of Rich's impairment due to alcohol sufficient to justify performing SFSTs.

¶21 Rich argues that his driving behavior did not indicate he was impaired, claiming that he exercised "perfect control of his Jeep" while changing lanes. He therefore contends that the other indicators of impairment must be more substantial to justify conducting SFSTs. *See County of Sauk v. Leon*, No. 2010AP1593, unpublished slip op. ¶20 (WI App Nov. 24, 2010).[3] He cites the unpublished case of *State v. Gonzalez*, No. 2013AP2585-CR, unpublished slip op. ¶13 (WI App May 8, 2014), for the proposition that "[n]ot every person who has consumed alcoholic beverages is 'under the influence.'" *Id.* (citation omitted). Rich argues that Zastrow did not observe that he had bloodshot eyes, slowed or slurred speech, or other traditional indicators that he was impaired due to alcohol. Therefore, Rich argues, there were insufficient facts to support Zastrow's suspicion that Rich was impaired and Zastrow's resultant expansion of the traffic stop to perform SFSTs.

---

[3] Unpublished opinions authored by a single judge and issued on or after July 1, 2009, may be cited for their persuasive value. *See* WIS. STAT. RULE 809.23(3)(b).

9

¶22 As we have already concluded, however, Rich's driving was not "perfect." Rich violated at least one traffic law. In addition, Rich revved his engine, aggressively accelerated, and changed lanes in a jolting manner, all of which contributed to a reasonable suspicion that he was driving while impaired. This driving behavior, when combined with the odor of alcohol that Zastrow observed and Rich's admission to consuming two beers, provided Zastrow with reasonable suspicion of impaired driving. Accordingly, Zastrow did not improperly expand the scope of the traffic stop by conducting SFSTs.

### III. Consent to breath test

¶23 Finally, Rich argues that he consented to only a single breath test, and when Zastrow ordered a second testing sequence and sample, he went beyond the scope of that consent. Rich correctly asserts that "[a] warrantless search is presumptively unreasonable." *See State v. Tullberg*, 2014 WI 134, ¶30, 359 Wis. 2d 421, 857 N.W.2d 120. Nevertheless, an established exception to the warrant requirement is a search made pursuant to voluntary consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 248 (1973). A search conducted with consent is constitutionally reasonable to the extent that the search remains within the scope of the actual consent. *State v. Wheeler*, 2013 WI App 53, ¶25, 347 Wis. 2d 426, 830 N.W.2d 278. "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *State v. Kelley*, 2005 WI App 199, ¶13, 285 Wis. 2d 756, 704 N.W.2d 377 (citation omitted).

¶24 We first note that Zastrow testified, and the circuit court found, that only one breath test actually occurred, not two. The court found that "six samples

were provided, which resulted in a completed breath test." Rich does not argue that this finding was clearly erroneous, and this alone defeats Rich's argument.

¶25 Even if Rich had challenged the circuit court's finding, Zastrow's testimony makes it evident that the two samples were a necessary part of one overarching breath test. Rich knew that may be the case as the Informing the Accused form, which was read to Rich, and to which he agreed when consenting to the test of his breath, explicitly reads that "[t]his law enforcement agency now wants to test one or more samples of your breath." The record therefore supports the court's finding that Rich's separate consent was not required for a second sample in the test to which he consented.[4] Any expectation on Rich's part that the scope of his consent extended to only one breath sample was eliminated when he consented to the testing of his breath after being read the Informing the Accused form, which explicitly explained that "one or more samples of breath" would be requested.

¶26 Rich argues that he *may* revoke his consent at any time during the test. *See* *State v. Matejka*, 2001 WI 5, ¶37, 241 Wis. 2d 52, 621 N.W.2d 891. Be that as it may, at no time did he actually do so. Zastrow testified that Rich remained silent throughout the testing process, and the record supports the circuit court's finding that there were no facts to suggest that Rich intended to limit his consent in any way. The court did not err in concluding that Rich consented to

---

[4] In his reply brief, Rich contends that the County's argument that Zastrow did not exceed Rich's consent in performing the breath test was undeveloped. Rich is correct that the County does not cite to case law in support of its position that multiple breath samples may constitute a single breath test. The issue here, however, is one of fact. The County argues that the facts support the circuit court's finding that Rich consented to provide multiple breath samples. This argument is well developed. As a result, we decline Rich's invitation to label the County's arguments as wholly undeveloped.

provide two sufficient breath samples as part of a single breath test. Furthermore, Rich's acquiescence supports the conclusion that a reasonable person would understand that the multiple breath samples were within the scope of the consent he provided.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.